101 Cal.App.2d 831 (1951)
RICHARD M. EXLEY, Appellant,
v.
ETHEL M. EXLEY, Respondent.
Civ. No. 7830. 
California Court of Appeals. Third Dist. 
Jan. 23, 1951.
 Preston & Falk for Appellant.
 Burke & Rawles for Respondent.
 VAN DYKE, J.
 The parties hereto were formerly husband and wife. A final decree of divorce dissolving their marriage was made and entered August 11, 1947. There was an only child of the marriage, a daughter now aged 9. Her custody was by the final decree in the divorce action awarded jointly to the parties, but the court ordered that the physical custody of the child be in the father except that during the months of July and September of each year such custody should be in the mother. The mother was also given the right to have the child visit with her on alternate weekends while in the custody of the father. After the final decree the mother married again and now resides at Santa Rosa with her husband, Harold E. Goslin. *833
 On July 9, 1949, the mother, respondent in this appeal, noticed a motion to modify the decree relative to the custody of the child and on July 22d following, the father, appellant here, likewise noticed a similar motion. Each party asked that the custody of the child be awarded to the moving party absolutely. Thus each sought modification of the existing order. The motions were heard together and evidence in support of each was taken. During the course of the hearings and after the court had inquired whether or not any mutual concessions were possible, the following occurred: "The Court: If you can't agree upon anything then you will have to proceed with your proof and I will have to decide it. Mr. Burke [Counsel for respondent]: We are willing to make this offer, your Honor, with respect to living conditions of the plaintiff's [really the respondent's] home. We are willing to have the probation officer of Sonoma County ... make an investigation of the home conditions in Sonoma County and to report to the Court and the Court to consider that evidence as testimony in the case. ... Mr. Falk [Counsel for appellant]: We have some testimony on that. ... We have no objection, if your Honor please, to have a report from the probation officer of Sonoma County. We will stipulate to that, if your Honor deems it necessary. The Court: Very well. ... That will be ordered." Thereafter witnesses were sworn by each party and testified. At the conclusion of the hearing, both sides announced to the court that they rested and the court said: "The matter will stand submitted on the report of the Probation Officer coming in," to which statement of the court counsel for the appellant replied, "Yes, your Honor." It appears from the record that, on August 22d following the hearing, the probation officer of Sonoma County addressed a letter to the trial judge, stating he had investigated the home of respondent as to its suitability for residence of the minor. In brief, he said he found the home to be a new one south of Santa Rosa and that the Goslins had lived there since April 1st of that year. A grammar school was two blocks from the home. There was a new cottage on either side; there were two bedrooms, kitchen, living room, bathroom with tub and shower and enclosed service porch, cemented backyard with outdoor patio. Other minor details were given, which we need not repeat. It was reported that Mr. Goslin had worked for the Greyhound bus company for 23 years and was still so employed, earning $400 per month; that the child would have *834 her own bedroom; that the house was furnished with new furniture, and house and yard were neat and clean. He stated his belief that the child would have "a wonderful home if they lived in the Goslin home and one they would be proud of." On October 5th the probation officer addressed a second letter to the trial judge. The officer reported he had again called at the Goslin home which he found to be satisfactory in every way; that respondent was well looked upon by her neighbors; that he felt the morale of the home was of the best; that respondent and her husband were adding two more rooms and that he had no reason to believe that the home would not be a good home for the child. In addition to the foregoing details the letter was generally commendatory as to the suitability of the home and to the effect that the respondent would give proper supervision to the child.
 Shortly thereafter the trial court entered an order awarding full and complete custody of the child to respondent until further order of the court. No right of visitation was expressed or reserved to appellant. From that order this appeal was perfected.
 In support of his appeal the appellant contends: 1. That there was no evidence of any change of circumstances from the date of the entry of the final decree and it was therefore error to change the custody of the child; 2. That the order was based in part upon inadmissible and incompetent evidence; 3. That the respondent is not a fit and proper person to have the custody of the minor; and, 4. That the order appealed from is not for the best interests of the child.
 With respect to the first contention the record discloses that when the first order of custody was made in the final decree of divorce the respondent had been working from the time of the making of the interlocutory decree and continued to be so employed through the interlocutory year and for some time thereafter. A stipulation had been entered by the parties to the divorce action that the custody of the minor be awarded to them jointly "with the understanding that the mother is now working and when and if she should thereafter be able and desirous of taking said child she may have the custody of said child, subject, of course, to the right in the plaintiff to see and visit said child at all reasonable times." It was further stipulated that both parents were fit and proper persons to have the care, custody and control of the minor. The court in the divorce action made no finding as to the unfitness of either party and in the main gave expression to the stipulation *835 in both interlocutory and final decrees. It appears from the record here that when the divorce proceedings were pending respondent had no fixed home into which she could receive the child, but that subsequent to her remarriage and several months before she moved to obtain custody she established a home with her husband in Santa Rosa, which was the subject of the probation officer's report. She testified that her husband was steadily employed; that she had had the child with her during July and that she had got along well in respondent's home; that her home was a good one and suitable for caring for her daughter. She described it much as did the probation officer. She related that she had always called for the child on the weekends when entitled to have her; that up until the time she moved to Santa Rosa she had lived in Ukiah and that on moving to Santa Rosa the distance necessary to be traveled to get the child at Willits, the home of appellant, and return her had greatly increased; that while in Ukiah she had lived in an auto court, since she could not find a house, and her quarters were cramped, but that she had room in the present home.
 There are some well settled rules that control the matter of awarding custody of a minor child after its parents have been divorced. [1] First, the court has continuing jurisdiction on good cause shown to change from time to time its custodial orders. [2] Again, it is not necessary that an order modifying a custodial decree should contain a finding as to unfitness of a parent from whom the custody is taken. (Simmons v. Simmons, 22 Cal.App. 448, 456 [134 P. 791]; Stever v. Stever, 6 Cal.2d 166, 167 [56 P.2d 1229]; Guardianship of White, 84 Cal.App.2d 624, 628 [191 P.2d 466].) [3] Also by force of Civil Code, section 138, as interpreted by our courts, there is of necessity confided to trial courts, when determining proper disposition of minor children, a very extensive discretion with a view of conserving the highest and best interest of such minors; and the conclusion arrived at by such courts in such cases will not be set aside unless the record discloses a clear abuse of that discretion. (Simmons v. Simmons, supra, at p. 451.)
 [4] As we have stated above, there was evidence of a change of circumstances of the mother of this minor and we hold the showing to have been sufficient to bring the matter within the broad discretion of the trial court above noted, and for that reason its ruling in this respect must be affirmed. Of course, in the above recital of facts we have, as we are *836 compelled to do, referred to that part of the evidence which supports the order made, notwithstanding in some respects there was conflicting testimony.
 [5] Appellant contends further that the order is based upon inadmissible and incompetent evidence and reference is had to the two letters received by the trial judge from the probation officer of Sonoma County. Appellant concedes that it was stipulated that these reports could be made, but he says it was presumed that they would comply with the law by being verified, that he would get a copy thereof and could object before a decision was made if he felt the reports were false. We have already referred to the stipulation concerning these reports and we think it can only be fairly inferred from what took place that the parties and the court understood that the report might be sent in and acted upon without any further proceeding; in fact at the close of the hearing the court aptly stated that such would be the situation, saying that the matter before it would be submitted when the officer had reported. No opportunity to challenge the report was then requested. We think appellant is in no position now to contend here that the mode of procedure in respect to the probation officer's report does not comply with the niceties of practice. In this connection it is to be noted that if there was in fact a misunderstanding which resulted, as asserted by counsel, to the detriment of himself or his client, a plain and speedy remedy was furnished by section 473 of the Code of Civil Procedure and a motion could have promptly been made for relief from the order if taken against appellant through mistake, inadvertence, surprise or excusable neglect. In support of such an order a showing could have been made that there was matter in the report of the probation officer which, as counsel here suggests, was false. Apparently no such steps were taken and we think that appellant's contentions which we are now discussing cannot be here sustained.
 But appellant further attacks the action of the court in considering and acting upon the report, saying that notwithstanding what the record contained concerning the stipulation, nonetheless under Code of Civil Procedure, section 283, subdivision 1, that stipulation was not binding because it was neither in writing nor entered in the minutes of the court; that it therefore formed no basis for the court's consideration of the matters reported to it and that prejudicial error was committed by such consideration. We think that the code section cited cannot be given such narrow interpretation, *837 particularly if the court has acted in reliance upon a stipulation made in open court. In Witaschek v. Witaschek, 56 Cal.App.2d 277, 283 [132 P.2d 600], in discussing section 283, subdivision 1, of the Code of Civil Procedure, the court said:
 "It is true that the code provision relied upon by appellant does impose exacting limitations upon the authority of an attorney to bind his client by stipulation, and early cases such as Preston v. Hill, 50 Cal. 43 [19 Am.Rep. 647], called for very strict compliance with the codal rule, but later pronouncements have indicated instances where the rule is relaxed, e. g., to vest the attorney with complete charge and supervision of the procedure to be adopted, the conduct of the trial and all cognate subjects, provided only the attorney does not impair, compromise or destroy his client's cause of action or subject matter of the litigation without his client's consent (Zurich etc. Co. v. Kinsler, 12 Cal.2d 98 [81 P.2d 913]), in which latter case the court quotes with approval the pronouncement that the recital of powers of an attorney as contained in the code does not exclude all other powers. ... 'If under the terms of a mutual stipulation, which was only verbal,' says the court, 'one party has received the advantage for which he entered into it, or the other party has at his instance given up some right or lost some advantage, so that it would be inequitable for him to insist that the stipulation was invalid, he will not be permitted to repudiate the obligation of his own agreement, upon the ground that it had not been entered in the minutes of the court.' "
 [6] In accord with the foregoing authorities we hold that under the circumstances shown by the record here the trial court did not err, following the stipulation, in treating the probation officer's report as testimony in the case since that was expressly within the terms of the stipulation. Appellant relies upon the case of Fewel v. Fewel, 23 Cal.2d 431 [144 P.2d 592], but we think it is inapplicable. The basis of the ruling there was that the trial court, without permitting either side to present evidence in a child custody proceeding, referred the entire matter to the court investigator and directed the parties to be in court at a future date without witnesses, stating that the court would adopt the recommendation of the investigator. This actually was done and neither party was even informed as to the contents of the investigator's report. The court aptly said concerning Code of Civil Procedure, section 261a, authorizing appointment on *838 such investigators in domestic relations cases: "The Legislature would have no power to substitute an investigator for a judge. Neither does such legislation authorize a trial court to deny to the parties any of the usual attributes of a fair trial in open court upon due notice." We think it apparent that the situation here is so far different from that referred to in the cited case that appellant can draw no support from that decision.
 [7] Appellant next contends that the record shows respondent to be an unfit person to have the custody of the minor and that the order appealed from is not for the child's best interests. These contentions cannot be sustained. The showing made of the capacity of the mother to properly house and care for her 9-year-old daughter, along with evidence of her continued care and concern for the child, all taken together with the fact that the child is a female child of tender years, is sufficient to give the necessary factual support to the court's decision. We say this notwithstanding there was a good deal of testimony coming from the appellant and his relatives to the effect that the mother had been guilty of various infractions of the moral code prior to the final decree of divorce. But these matters do no more than raise a conflict and afford no ground for reversal.
 Lastly, complaint is made that the order appealed from contains no provisions expressly giving to appellant any right of visitation or right to have the child of the parties with him at any time. We cannot tell from the record what was the reason why the order contained no provisions as to such matters. It does not expressly give such rights to the father; neither does it in terms deny the same. This may have been the result of inadvertence. There is nothing to indicate the court felt the appellant was undeserving of such usual provisions. There is no conflict in the record touching his fitness and even counsel for the respondent in open court stated during the hearing that, while their motion asked complete custody, yet they were agreeable to visitation rights in favor of the father, including his right to have the child with him for extended periods during school vacations. When a home breaks up a minor child must lose to a great degree the benefit of dual parental control and care and must spend its time separately with each parent. Yet it is generally considered to be the right of the parent who must lose the privilege of having the child for most of the time to have such contact with the child as can be afforded, the general interest of the *839 child considered. In a similar situation the Supreme Court in the case of Clarke v. Clarke, 35 Cal.2d 259, 262 [217 P.2d 401], disposed of the matter in the following way:
 "The plaintiff also contends that the court abused its discretion in failing to reserve to the plaintiff a right of reasonable visitation. The question of the plaintiff's right to visit the child was not raised at the hearing. Furthermore his right of visitation was not included in the interlocutory decree. In the absence of express prohibition, rights in that regard ensue from parenthood (Wand v. Wand, 14 Cal. 512, 518), .... It was probably not deemed necessary to include the specific requirement in the decree or the modification order."
 In the early case of Wand v. Wand, 14 Cal. 512, 518, referred to in Clarke v. Clarke, supra, and touching the same matter, the Supreme Court there observed:
 "... We do not see why the mother should not, in the first instance, be intrusted with this office, for which she seems, upon every ground of humanity and natural right, to have the claim. For it does not at all follow that, in the present unhappy state of relations of these parties, the care or protection of the father is to be relinquished, or his parental duties or obligations destroyed. On the contrary, he has a right to be admitted to see the child at all convenient times when he may desire it. For the purpose of insuring him in the enjoyment of this right, he may have leave at any time to apply to the District Court for the necessary orders--for which the cause may be considered as open, so as to provide the necessary relief, if application be unhappily necessary. But it is to be hoped that this matter can be, as it should be, amicably settled by the parties so as to give the full benefit of parental protection and care to this child, and at the same time give to both parents the comfort of her society."
 [8] As held in the Clarke case, supra, in the absence of express prohibition, and none such appears in the order appealed from, rights of reasonable visitation, including the right to have the child with him on proper occasions, ensue from parenthood and it cannot be said that the court has denied these rights to appellant. While it might have been better for the trial court, on ordering the change of custody, to have included in its decree express provisions governing the exercise of this natural right, nevertheless we cannot say that the failure to do this, not amounting to a prohibition of such rights, constituted such an abuse of discretion in the premises as to justify reversal of the decree as made, either *840 in whole or in part. If appellant in the exercise of this right is met with such opposition or lack of cooperation as in practical effect would amount to a denial of such right by the mother, then the way is open to him to apply to the court to make by specific order such practical arrangements as will preserve the right to him.
 The order appealed from is affirmed.
 Adams, P. J., and Peek, J., concurred.